Prepare decision accordingly.

---

(68 Misc. Rep. 205.)

CITY OF NEW YORK v. PELHAM PARK R. CO.

(Supreme Court, Special Term, New York County. June, 1910.)

TAXATION (§ 153*)—STREET RAILROADS—STATUTORY PROVISIONS.

General Street Railroad Act, § 8, as originally passed (Laws 1884, c. 252), provided that no percentage of gross earnings need be paid by a railroad in a municipality of less than 250,000 inhabitants, except when required by the local authorities as a condition to its construction, operation or extension, but that in a city of 250,000 inhabitants or over such a payment must be made whenever a line was constructed or extended after passage of the act. *Held* that, where by annexation a city whose population is less than 250,000 becomes part of a city having a greater population, a street railway therein becomes liable to pay a percentage of its gross receipts to the city.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 153.*]

Action by the City of New York against the Pelham Park Railroad Company. On demurrer to separate defense. Demurrer sustained, with leave to amend.

Frank B. Pierce, Asst. Corp. Counsel, for plaintiff.

J. Osgood Nichols, for defendant.

WHITNEY, J. Under section 8 of the general street railroad act, as originally passed (Laws 1884, c. 252), no percentage of gross earn-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ings was required to be paid by a railroad in a municipality of less than 250,000 inhabitants, except when required by the local authorities as a condition to its construction, operation, or extension. In a city of 250,000 or over, however, such a payment was required whenever a line was constructed or extended after the passage of the act. The provision had no element of contract or consent about it. It was mandatory and self-executing. It was based upon the assumption that in a large city, as a general proposition, there are special advantages warranting such a special exaction, and it was drawn upon general lines, regardless of the fact that a central line in a small city is more lucrative than an outlying branch in a large one. What would then have happened had a municipality of less than 250,000 inhabitants, when the road was constructed, increased its population until it passed this limit? I see no reason for holding that this mandatory clause would not have then attached. The conditions of that clause would both be fulfilled—construction or extension subsequent to the act, and the required concentration of population. Would not the same reasoning apply when the second condition is met by annexation to an adjacent city instead of by increase of population within the original boundaries of the municipality by which the railroad was authorized? I do not see why not. There is nothing unconstitutional or unfair about such an interpretation of the statute. Growth of a city, whether by increase of the population within its boundaries or by extension of its boundaries so as to take in the neighboring villages, was one of the risks which street railroad builders after 1884 knew about and ran.

In the revision of the statutes some change was made in the phraseology, but I find none that limits the effect of the original act, except that the population limit is raised from 250,000 to 1,200,000. Hence I am forced to the conclusion that upon annexation defendant became liable to the percentage payment. The authorities upon superficially analogous situations afford no particular assistance, as each turns upon its own particular facts. See People ex rel. Woodhaven Gaslight Co. v. Deehan, 153 N. Y. 528, 47 N. E. 787; Enton v. C. I. & Brooklyn R. R. Co., 136 App. Div. 800, 121 N. Y. Supp. 793, and cases cited. The further separate defense requires no discussion since this is an action at common law. The demurrer must, therefore, be sustained, with $10 costs, with leave to amend upon payment of costs.

Demurrer sustained, with $10 costs, with leave to amend upon payment of costs.